212

## JOHN EDWARD JOHNSON V. STATE

No. 31,122. February 10, 1960

Motion for Rehearing Overruled March 23, 1960

*Duke Taylor, Jr.* and *Bill F. Griffin, Jr.*, both of Center, for appellant.

*Fred Hudson*, District Attorney, *Center*, and *Leon Douglas*, State's Attorney, Austin, for the state.

BELCHER, Judge

The conviction is for burglary of a private residence at night with the intent to commit theft; the punishment, ten years.

The testimony of Mrs. Sapp, the sole occupant of a private residence in Timpson, Shelby County, shows that at 1:15 A.M., July 25, 1958, she was awakened by a person who had by force and without her consent entered her house through a window, that as she leaped from her bed he attacked her with a knife and she began screaming and he fled. Mrs. Sapp bled from the numerous cuts inflicted with the knife. While testifying she referred to the appellant and stated that he was the same size and "bulk" of the person who entered her room.

A knife with blood on it was found near the Sapp residence about 8 a.m. on July 25.

On December 24, 1958, Sheriff Christian of Shelby County took appellant to the district attorney's office where he made a statement to the district attorney which was reduced to writing and signed by him. In the statement, which was introduced in evidence by the state, he admitted burglarizing the Timpson locker plant after midnight, July 25, for the purpose of getting a knife because he was "planning to break into a place" and knew he would "have to use" it "if the lady was at home"; that he got the knife from the plant and then went to the Sapp residence where he knew a woman lived alone and used the knife to force his way through a window into the house with the intent to steal; that when the woman in the house awakened she began screaming and fighting and he cut her with the knife, and then fled dropping the knife. The statement recites that he identified the kinfe which Sheriff Christian was exhibiting to him during the making of the statement as the knife he stole from the locker plant on the night of July 25 and shortly thereafter used to cut the woman in the house he had forcibly entered.

The knife exhibited by Sheriff Christian and identified by the appellant as shown by his written statement to the district attorney was also identified by the owner of the locker plant while he was testifying as his knife which disappeared from the locker plant when it was burglarized on the night of July 25. The owner further testified that after the burglary of the plant he next saw the knife near Mrs. Sapp's house after it was burglarized.

Appellant's written confession of December 24 also states that on the night of July 25 he used some boxes to reach a window of the Sapp house, removed the moulding, pulled a screen off, raised, and then entered through the window. These facts and circumstances are corroborated by the state's testimony showing the conditions of and surrounding the house before and after the burglary.

The confession also recited that about an hour after the Sapp burglary appellant went to his house, changed clothes and then went to a camp where he burned his bloody clothes. Testimony was offered showing the camp as described in the confession and a place there where things had been burned.

On December 31 appellant made another written statement to the district attorney which was introduced in evidence by the state. It refers to his written statement of December 24, and states there were somethings he wanted to add about where he was on the night he went to the Sapp residence and cut the woman. It then relates his movements and who he was with before and after he went to the Sapp residence.

Appellant testifying in his own behalf admits that he was in Timpson on the night of the Sapp burglary but he denied entering the Sapp residence; he testified that while he was with several other persons, including the nightwatchman on the street in Timpson, they heard a woman scream which was about the time and in the direction of the Sapp residence when it was burglarized. His alibi testimony was substantially corroborated.

On cross-examination he admitted signing the written statements introduced in evidence but says he did so because of the physical abuse of him by the officers and that he was scared, and that the facts in the statements are not true.

In rebuttal as well as on direct the state offered testimony of the voluntary character of the written statements.

The contention that the evidence shows that the written statements are involuntary as a matter of law and inadmissible in evidence has been carefully considered and overruled.

The evidence raises the issue of the involuntary character of the confessions which was submitted to the jury. Appellant's alibi was also submitted to the jury.

The jury resolved the issues of fact against the appellant and the evidence is sufficient to support its verdict.

Error is urged in the refusal of the trial court to charge the jury that the testimony concerning the knife introduced in evidence, which was stolen from the locker plant on the night of the Sapp burglary, could only be considered by them for the purpose of showing the intent and design of the appellant.

The testimony of the theft of the knife from the locker plant constitutes one of the details of the whole criminal scheme to burglarize the Sapp residence. In his written statement appellant said that he broke into the plant to steal the knife because he

knew he would have to use it if the occupant of the residence was there when he entered. The knife was found at the Sapp residence and identified by the plant owner as his knife taken when the plant was burglarized. The testimony was admissible on the main issue therefore no error is shown in the court's refusal to limit it in the charge. I Branch 2ed. 243 sec. 211; Wright v. State, 56 Tex. Cr. Rep. 353, 120 S.W. 458; Miller v. State, 140 Tex. Cr. Rep. 640, 146 S.W. 2d 392.

Appellant contends that the trial court **erred in** refusing to instruct the jury that the testimony of Deputy Sheriff Poss as to any possible theft of $110 by the appellant from his grandfather was admitted solely for the purpose of aiding the jury in determining the involuntary character of his confession and could not be considered by them for any other purpose; and that the trial court further erred in refusing to charge the jury that his running away from the custody of Officer Poss was admitted solely for the purpose of determining the involuntariness of his confession, and it could not be considered as any evidence of his guilt of the offense here charged.

Deputy Sheriff Poss testified that the appellant admitted taking the $110 but they never recovered it, and that he was later told the grandfather had found it. He also testified without objection that during the search for the money the appellant ran from him but was soon retaken.

The testimony concerning the theft of the $110 by the appellant was first brought before the jury in this case when the appellant called his grandfather as a witness. He testified that he missed $110 from his home and accused the appellant of getting it which the appellant denied; that he reported the loss to the sheriff who took custody of the appellant. He further testified that he later found the $110 in his house.

Appellant testifying in his own behalf stated that he told officers twice where the $110 was and pointed out the place where he hid it but they were unable to find it; that he admitted taking it because he was scared and that he never in fact took the money; and that while they were searching for the money he tried to run away from the officers.

The refusal to limit the consideration of the testimony of Deputy Sheriff Poss as to appellant's theft of the $110 and his flight from Poss to the involuntary character of his written

statements does not show error because the appellant testified to the same facts.

Appellant complains of the refusal of the trial court to charge separately on the law and apply it to the evidence as to each of the two written confessions because there was an issue as to their voluntary character; and that the charge failed to instruct the jury that if one of the confessions was illegally and the other lawfully obtained that they could not consider the one illegally obtained for any purpose.

The court instructed the jury on the law applicable to the taking and the admission in evidence of written statements by the accused and the requirements that must be complied with before they could be considered against him.

In applying the law to the facts the court fairly and adequately instructed the jury as to its consideration of each statement, and applied the law of reasonable doubt as to whether each was freely and voluntarily made. No error is shown.

Finding no reversible error the judgment is affirmed.

Opinion approved by the Court.